**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHERICE E. SMITH and JAMES SMITH,**
**Individually and as Husband and Wife,**

                                          **Plaintiffs,**

          **vs.**                                          **1:10-CV-1457**
                                                           **(MAD/CFH)**

**TARGET CORPORATION,**

                                          **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

DeLORENZO LAW FIRM                        Paul E. DeLorenzo, Esq.
The Lupe Building
670 Franklin Street, 2nd Floor
Schenectady, New York 12305
*Attorney for Plaintiffs*

CARTER, CONBOY, CASE, BLACKMORE,
MALONEY & LAIRD, P.C.                     Edward D. Laird, Jr., Esq.
20 Corporate Woods Boulevard
Albany, New York 12211
*Attorneys for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

       Plaintiffs commenced the within action seeking against Target Corporation ("Target")

seeking monetary damages for pain and suffering and loss of consortium as a result of an accident

that occurred on May 24, 2010.  Plaintiffs allege that defendant negligently and carelessly

maintained a Target store and allowed a dangerous condition to exist resulting in injury to

plaintiff, Sherice E. Smith.[1]  Presently before the Court is defendant's motion summary judgment

and dismissal of plaintiffs' complaint pursuant to Fed. R. Civ. P. 56.  In the alternative, defendant

seeks an order dismissing plaintiff James Smith's second cause of action due to the failure to

prosecute pursuant to Rule 41(b) and an order precluding expert testimony pursuant to Local Rule

26.3 and Fed. R. Civ. P. 37(c)(1). (Dkt. No. 20).

## FACTS[2]

The facts in this case, unless otherwise noted, are undisputed.  The subject incident

occurred on May 24, 2010 at the Target Store located at 428 Balltown Road, Schenectady, New

York.  At approximately 3:30 - 4:00 p.m, plaintiff, Sherice Smith, arrived alone at the Niskayuna

Target.  Plaintiff traveled by bus to the store. Plaintiff took a shopping cart and proceeded to shop

for groceries and electronics.  Plaintiff was in the store for approximately ninety minutes.

Plaintiff checked out her items and asked a customer service representative to watch her

---

[1] This action was originally commenced in New York State Supreme Court, County of Schenectady.  On December 2, 2010, defendant removed the action based on diversity of citizenship.  (Dkt. No. 1).

[2] Defendant properly filed a Statement of Material Facts pursuant to Local Rule 7.1.  Plaintiffs, although represented by counsel, failed to respond to defendant's Local Rule 7.1 Statement of Material Facts.  Local Rule 7.1(a)(3) states:

> The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute.  <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>

Local Rule 7.1(a)(3)(emphasis in original).  As plaintiffs have failed to properly respond to defendant's Statement of Material Facts, the Statement will be accepted as true to the extent that the facts are supported by evidence in the record.  *See Orraca v. Pilatich*, 2008 WL 4443274, at *3 (N.D.N.Y. 2008); *see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (the Court deemed the properly supported allegations in the defendant's L.R. 7.1 Statement admitted for the purposes of the motion).

The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) defendant's Statement of Material Facts; and (4) the exhibits and evidence submitted by defendant in support of the Motion for Summary Judgment.  The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

purchases while she used the restroom.   Upon leaving the restroom, she retrieved her purchases and began walking towards the exit doors to leave.   Plaintiff was wearing flip-flops and had two plastic bags in her right hand and one plastic bag in her left hand.   Plaintiff was also carrying a shoulder bag over her shoulder.   Plaintiff described the lighting in the store as "normal".   When she arrived at the doors, she realized that she could not exit because she was at the entrance doors.   Plaintiff then proceeded towards the exit doors.   While walking near the cart corral, plaintiff fell.   Plaintiff testified that she was looking straight ahead at the time she fell.   She could not recall which part of her body hit the floor first.   At her examination before trial, plaintiff testified that she fell on a rug:

> Q.   Did there come a point where you observed what caused you to fall?
> A.   Yeah.
> Q.   And what was that?
> A.   The rug.
> Q.   And what observations did you make with respect to the rug?
> A.   The rug, it was worn.  The part that was supposed to secure the rug, it was deteriorated.
> Q.   How so?
> A.   I don't know how to explain it.
> Q.   Try your best.
> A.   This is the rug (indicating).  The rug is supposed to be flat down.  You know the black tape or whatever they put around it?
> Q.   Yes.
> A.   It was worn.  It wasn't no good.  I went to walk and I just tripped.
> Q.   Do you know for sure that's what caused you to trip?
> A.   Yes.
> Q.   How do you know that's what caused you to trip?
> A.   How do I know?
> Q.   Yes.
> A.   Because when I went to step - - I just know.  I can't explain it. I don't know.
> Q.   But you weren't looking down at the time of your fall?
> A.   No.
> Q.   And the actual object that you claim you tripped on was that black area?

3

A.      Yes.
                          Q.      In between the rugs?
                          A.      Yes.

Pl. Dep. at pp. 45-47.

After plaintiff fell, she was approached by three Target employees while she was still on

the floor.[3]  Dileep Rathore, the Store Manager, prepared a Guest Incident Report.[4]  Plaintiff

identified the report during her deposition and stated that it accurately and fairly described her

incident.  The report indicates the time of the incident at 3:12 p.m. and location as "front of the

check lane, in cartholder area".  The section of the form entitled "Guest Description of the

incident, injury and/or damage (in their own words)" provides:

                    just about to walk out [sic] the store, she tripped on the seam of the
                    carpet, she injured her knees as she fell and claims she twist [sic] her
                    back.

The cause of the accident is described as "tripped over a carpet seam" and indicates

plaintiff was wearing green flip flops.

Another employee, Senior Team Lead, Stacie Young, also attended to plaintiff.  Ms.

Young testified that she witnessed plaintiff fall in front of the cart area but that she did not

observe what caused plaintiff to fall.  After the incident, Ms. Young inspected the carpet and

testified that there was a "ripple", that she described as approximately 1/4 inch or lower, in the

area where the carpet meets the front entrance carpet.  Ms. Young testified that she was unaware

of any prior complaints regarding the carpet.

---

[3] Plaintiff could not identify any of the employees by name.

[4] Mr. Rathore was not deposed and did not provide an affidavit authenticating the report.  However, plaintiff identified the report during her deposition and indicated that it accurately reflected the incident.  Moreover, plaintiff does not challenge the authenticity of the report.  Accordingly, the Court will consider the report in the context of the within motion.

Two days after the accident, plaintiff's husband returned to Target to take photographs with his cell phone.[5]  Plaintiff is not aware of anyone who may have commented on the condition of the rug or tripped and fell prior to the date of her accident.

Frank Tinnirella, the Niskayuna Target Facilities Manager, testified at an examination before trial on behalf of defendant.  Mr. Tinnirella conducts daily inspections of the store every morning prior to 8:00 a.m. and records his inspections.  Mr. Tinnirella stated that, "at some time prior" to plaintiff's accident, he noticed a separation of the transition strip between the entrance carpet and the carpet near the cart corral area.  Mr. Tinnirella could not recall when he noticed this issue but testified that "it could have been a couple days before [plaintiff's accident] and it could have been as much as a week before".  The transition strip is a rubber beveled edge that is vulcanized to the carpet to ease the transition from a hard surface or from one carpet surface to another carpet surface.  Mr. Tinnirella repaired the strip with epoxy contact cement and rolled it with a heavy roller.  Mr. Tinnirella also put a black, vulcanized sealing strip over the top of the epoxy contact cement.   After Mr. Tinnirella put the sealing strip on, he described the difference in elevation at the transition strip between the two carpets as under an eighth of an inch.  Mr. Tinnirella is not aware of any prior complaints regarding the carpet or any prior accidents involving the carpet near the cart corral.

## PROCEDURAL HISTORY

On December 2, 2010, defendant removed this matter to federal court.  On April 28, 2011, United States Magistrate Judge David R. Home issued a Uniform Pretrial Scheduling Order that provided, *inter alia*:

---

[5]  The Court has reviewed the photographs.  The photographs are of very poor quality.  At her deposition, plaintiff was presented with copies of the pictures and testified that they "look[ed] like black spots.

1. THE DEADLINES SET IN THIS SCHEDULING ORDER SUPERCEDE THE DEADLINES SET FORTH IN FED. R. CIV. P. 26(a)(3) AND ARE FIRM AND WILL NOT BE EXTENDED, EVEN BY STIPULATION OF THE PARTIES, ABSENT GOOD CAUSE. *See* Fed. R. Civ. P. 16(b).

6.    Discovery:

All discovery in this matter must be completed on or before November 30, 2011.

Special Procedures for management of expert witnesses:
There will be binding disclosure of the identity of expert witnesses (including curriculum vitae) as set forth below.

A.    Expert Reports.  With regard to experts who are retained or specially employed to provide expert testimony in the case or who duties as an employee of the party regularly involve giving expert testimony:

(1)    No later than 90 days prior to the discovery deadline set forth in paragraph 6 above, PLAINTIFF(S) shall identify any expert(s) and, unless waived, shall serve on the other parties the expert's written report pursuant to Fed. R. Civ. P. 26(a)(2)(B).

(2)    No later than 45 days prior to the discovery deadline set in paragraph 6 above, DEFENDANT(S) shall identify any expert(s) and, unless waived, shall serve on the other parties the expert's written report pursuant to Fed. R. Civ. P. 26(a)(2)(B).

B.    The failure to comply with the deadlines set forth in subparagraph (A) above may result in the imposition of sanctions, including the preclusion of testimony, pursuant to Fed. R. Civ. P. 16(f).

(Dkt. No. 11).

On July 18, 2011, defendant served a Notice to Take Deposition Upon Oral Examination on plaintiffs.  On August 11, 2011, a telephone conference was held and discovery deadlines were extended to March 1, 2012.  (Dkt. No. 13).  On November 22, 2011, plaintiff, Sherice Smith, was deposed.  Plaintiff testified that she is seeking a divorce from J. Smith but that he cannot be

located.  On December 6, 2012, upon the completion of a mid-discovery telephone conference,

Magistrate Judge Homer issued an order stating that on or before December 13, 2011, plaintiffs

shall identify, in writing, the names and addresses of all treating physicians or sources who

plaintiffs may call to testify at trial pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).  (Dkt. No. 14).

Plaintiffs' counsel asked for additional time for expert disclosure.  However, that request was

denied based on the previous four-month extension.  Plaintiffs did not disclose any expert

witnesses, including treating physicians, in accordance with this Court's orders and Local Rule

26.3.  On December 7, 2011, defense counsel wrote to plaintiffs' counsel informing counsel of the

intention to move to dismiss J. Smith's cause of action.  To date, J. Smith has not appeared for a

deposition, counsel has not moved to withdraw and no Stipulation of Discontinuance has been

executed by J. Smith.

On April 20, 2012, defendant filed the within motion for summary judgment.  On June 5,

2012, a Text Order was issued granting plaintiffs a two-week extension of time to file a response.

On June 19, 2012, plaintiffs filed a response to defendant's motion for summary judgment.

## DISCUSSION

## I.        Standard on Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 ( c ). Substantive

law determines which facts are material; that is, which facts might affect the outcome of the suit

under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986). A party

moving for summary judgment bears the initial burden of demonstrating that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)  If the Court, viewing the evidence in the light

most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.* "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir.1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F .3d 81, 86 (2d Cir.1996) (citing Fed.R.Civ.P. 56 ( c ). In applying this standard, the court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citation omitted). These determinations are within the sole province of the jury. *Id.*

"In deciding a motion for summary judgment, the court may consider only admissible evidence." *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 2008 WL 4541024, at *3 (E.D.N.Y. 2008) (citing *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)). "It is appropriate for a district court to decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment." *Id.* (quoting

*Cacciola v. Selco Balers, Inc.*, 127 F.Supp.2d 175, 180 (E.D.N.Y. 2001)). "If the court decides to exclude expert testimony, a decision on summary judgment is made on the remainder of the record." *Id.* (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)).

## II.     Evidentiary Issues

In support of the motion, defendant provided an affidavit from Stacie Young and Frank Tinnirella.   Plaintiffs object to Frank Tinnirella's affidavit arguing that it is inadmissible because Mr. Tinnirella is not an expert in carpet repair or replacement.  In opposition to defendant's motion, plaintiffs submitted Sherice Smith's affidavit, an attorney affidavit and an "Expert Affidavit" from Michael Marra ("Marra").   Defendant objects and argues that all three affidavits are inadmissible for the reasons discussed below.

## A.     Tinnirella's Affidavit

Plaintiff objects to the admissibility of Mr. Tinnirella's affidavit on the basis that he is not a qualified expert.[6]   Mr. Tinnirella was deposed in this matter and produced as a witness for the defense.  He is currently employed as a Facilities Manager at Target and his responsibilities include preventative maintenance programs, asset management, regular inspections of the store premises and addressing customer complaints and safety issues.

Fed. R. Civ. P. 701( c) provides:

> Opinion Testimony by Lay Witnesses
> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> ( c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

---

[6] Defendant has not responded to this argument.

A "witness with specialized knowledge may be permitted to testify as a lay witness if the witness had direct personal involvement with the factual matters of the case." *Lujan v. Cabana Mgmt., Inc*., 2012 WL 3062017, at *24 (E.D.N.Y. 2012) (citing *M.O.C.H.A. v. City of Buffalo*, 2008 WL 4412093, at *3 (W.D.N.Y. 2008) (education expert had "specialized knowledge," but was not testifying as an expert witness because she had direct personal involvement in the factual matters of the case)).

Defendant has not designated Mr. Tinnirella as an expert witness. Mr. Tinnirella is clearly a fact witness as he provided deposition testimony as a defense witness relating to repairs he himself made to the carpet in the area where plaintiff's accident occurred. Thus, to the extent that Mr. Tinnirella's affidavit does not contradict his prior deposition testimony and is based on personal knowledge rather than specialized knowledge within the scope of Fed. R. Civ. P. 702, it will be considered herein. *See Park West Radiology v. CareCore Nat. LLC*., 675 F.Supp.2d 314, 335 (S.D.N.Y. 2009).

**B.      Plaintiff's Affidavit**

In opposition to the motion, plaintiff provided an Affidavit of Sherice Smith dated June 18, 2012. Defendant claims that plaintiff's affidavit contains facts which contradict her prior deposition testimony and thus, it should not be considered herein.

It is well settled in the Second Circuit that a party's affidavit which contradicts her own prior deposition testimony should be disregarded on a motion for summary judgment. *Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987) (internal citations omitted). If a party, who has been examined at length on deposition, could raise an issue of fact simply by submitting an affidavit that, by omission or addition, contradicted her own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. *Perma*

*Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *see also Brown v.*

*Henderson*, 257 F.3d 246, 252 (2d Cir. 2011) ("[f]actual allegations that might otherwise defeat a

motion for summary judgment will not be permitted to do so when they are made for the first time

in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [ . . .] prior

deposition testimony").   Courts have recognized that "a material issue of fact may be revealed by

subsequent sworn testimony that amplifies or explains, but does not merely contradict, prior

testimony, especially where the party was not previously asked sufficiently precise questions to

elicit the amplification or explanation." *F.D.I.C. v. Wrapwell Corp.*, 2002 WL 14365, at *15

(S.D.N.Y. 2002) (quoting *Rule v. Brine*, 85 F.3d 1002, 1011 (2d Cir. 1996)).

     "Courts may disregard an affidavit even if the witness was not explicitly examined on an

issue, if allowing the affidavit to stand would change the 'flavor and theory' of the case by

introducing new causes of action or entirely new theories of recovery not previously disclosed."

*Young v. U.S.*, 2002 WL 31341082, at *5, n.2 (E.D. Pa. 2002) (citation omitted); *see also*

*Pellegrino v. McMillen Lumber Prods. Corp.*, 16 F.Supp.2d 574, 583 (W.D.Pa.1996) (counsel

could not reasonably be held accountable for failing to uncover information through discovery

because it greatly differed from nature of case as stated in complaint).  Affidavits that speak to the

cause of an accident that do not elaborate on previously disclosed evidence are not permitted to

the extent that they present entirely new theories contradicting reports and deposition testimony.

*Cf. OneBeacon Am. Ins., Co. v. Comsec Ventures Int'l, Inc.*, 2010 WL 114819, at *1, n.1

(N.D.N.Y. 2010) (the court did not exclude an expert affidavit insofar as it elaborated on

previously exchanged Rule 26 reports rather than new theories contradicting prior reports and

sworn testimony).

Here, the reliability of plaintiff's affidavit is suspect as it was prepared after the motion for summary judgment was filed with the Court. *See Winston v. Marriott Int'l, Inc*., 2006 WL 1229111, at *7 (E.D.N.Y. 2011). Substantively, plaintiff's assertions in her post-motion affidavit are an attempt to change the theory of her case. The affidavit contains allegations regarding the cause of the accident that were not revealed at the deposition and go beyond an attempt to amplify or explain prior testimony. Specifically, Paragraphs 13 through 19 provide:

13. I observed that the rug was worn out in-between two sections of carpet that met at a right angle around the area where the shopping carts were stacked.

14. That tape around the right angle looked worn as well as black material holding the carpet down; it looked like this black material was supposed to secure the rug down.

15. The rug was not only worn out, but it was pulled up about ½ inch off the black material holding it down.

16. And as i was walking around the shopping carts, my foot went down a level change one inch in total.

17. This was due to a depression of ½ inch in-between the adjoining right angle were [sic] the two sections of rugs met.

18. It appeared to me that there was a total of one inch difference between the worn out rug being pulled up and the depression between the sections of flooring.

19. After this level change or depression my foot got caught in the warn corner area that met at a ninety degree angle.

The aforementioned paragraphs of plaintiff's post-motion affidavit clearly contradict plaintiff's prior deposition testimony. The statements contain allegations relating to the cause of plaintiff's fall that were not disclosed during plaintiff's deposition. At the deposition, defense counsel made specific inquiries regarding the cause of plaintiff's fall and focused on the carpet. At no time did plaintiff describe the carpet in the detail that is contained in the affidavit.

Moreover, at no time during the deposition did plaintiff describe, mention or even allege that a depression or height differential in the carpet existed or caused her to fall. Indeed, during the deposition, plaintiff's memory of the accident was muddled. When presented with photographs of the scene, plaintiff could not remember where she fell:

> Q. Do these photographs represent the area where you claim you fell?
> A. Yes.
> Q. Of these five exhibits, which photograph best displays the area?
> A. I don't know.
> Q. If i were to ask you to make a mark on one of the photographs - -
> A. I would say this one (indicating).
> Q. So you are point to Defendant's Exhibit H?
> A. Yes.
> Q. If you would be so kind to put an X with a circle around it in the area you claim you fell.
> A. I can't remember.
> Q. Was the area close to the cart corral area?
> A. Yes.
> Q. Could you estimate how may feet away from the cart corral area your fall occurred?
> A. I would say somewhere around here (indicating).
> Q. So would you feel comfortable, you can make the X as big as you like, but would you feel comfortable marking that that's the area where you fell?
> A. Not really because I'm not sure.
> Q. Okay.
> A. But I think it was somewhere over here (indicating).
> Q. In the corner area?
> A. This is customer service. That's the bathroom. So I'm right here (indicating).
> Q. Why don't you go ahead and do that, make an X.
> A. Yes.
> Q. Would you mind putting your initials on there too?
> A. Can I put not sure?
> Q. The record will reflect that.

Pl. Dep. at pp. 49-51.

In her post-motion affidavit, plaintiff is now stating, definitively, where she fell and how she fell. Those statements are in direct conflict with her prior assertions that she could not remember. *See Galletta v. Valmet, Inc.*, 2007 WL 963288, at *5 (N.D.N.Y. 2007) (rejecting the portion of plaintiff's affidavit wherein he attempted to negate his earlier assertion that he "did not remember" the warning signs).

Accordingly, the Court will not consider paragraphs 13 through 19 of plaintiff's post-deposition affidavit in the context of this motion.

## C.    Attorney DeLorenzo's Affidavit

Rule 56(e) specifically requires that affidavits in summary judgment motions be based upon personal knowledge. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). An attorney's affidavit not made on his own personal knowledge of the facts, but merely stating what he believes or what he intends to prove at trial, does not measure up to the requirements of Rule 56(e). *Isaacs v. Mid Am. Body & Equip. Co.*, 720 F.Supp. 255, 257 (E.D.N.Y.1989) (internal citation omitted). The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge. *Searles v. First Fortis Life Ins. Co.*, 98 F.Supp.2d 456, 461 (S.D.N.Y.2000).

In this case, Attorney DeLorenzo's affidavit contains a description of the accident and the area of the fall. Attorney DeLorenzo does not contend that he was present when plaintiff fell. Consequently, the Court will not consider any portion of Attorney DeLorenzo's affidavit that is not based upon personal knowledge and in violation of Rule 56(e).

## D.    Marra's Affidavit

Defendant presents two arguments with regard to Marra's affidavit. Defendant argues that Marra was not timely and properly disclosed as an expert witness pursuant to the Court's prior

Orders and Local Rules.  Plaintiffs never previously identified Mr. Marra as a potential witness and did not exchange any written report.  Defendant also contends that even if the Court excuses the untimely disclosure, Marra's affidavit is speculative and conclusory.  Therefore, defendant contends that his affidavit should not be considered in the context of the within motion. Plaintiffs have not addressed this argument nor have they explained the delay in disclosing Marra as a potential witness.  Moreover, plaintiffs did not provide Marra's Curriculum Vitae.

## 1.    Timeliness

Local Rule 26.3 provides:

> Production of Expert Witness Information
> There shall be binding disclosure of the identity of expert witnesses. The parties shall make such disclosure, including a curriculum vitae and, unless waived by the other parties, service of the expert's written report pursuant to Fed.R.Civ.P. 26(a)(2) (B), before the completion of discovery in accordance with the deadlines contained in the Uniform Pretrial Scheduling Order or any other Court order. Failure to comply with these deadlines may result in the imposition of sanctions, including the preclusion of testimony, pursuant to Fed.R.Civ.P. 16(f). If a party expects to call a treating physician as a witness, the party must identify the treating physician in accordance with the timetable provided in the Uniform Pretrial Scheduling Order or other Court order.

N.Y.N.D.L.R. 26.3.

"The filing of an expert affidavit in an effort to defeat a motion for summary judgment nearly eight months after the deadline for expert disclosure had passed is a flagrant disregard for the deadlines and will not be tolerated."  *Vona v. Schindler Elevator Corp. Mgmt.*, 2009 WL 2152309, at *8 (W.D.N.Y. 2009).   In assessing whether to preclude an expert's report, Courts should consider: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the

opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

In the *Vona* case, the district court was presented with an analogous procedural issue. In response to defendant's motion for summary judgment, plaintiff provided an expert affidavit and curriculum vitae for an expert witness not previously identified or disclosed. The Court, applying the Second Circuit's three-part test, held:

> [P]laintiffs offer no explanation whatsoever for their failure to comply with this Court's Case Management Orders and the requirements set forth in Fed.R.Civ.P. 26(a)(2)(B). Plaintiffs simply include an affidavit from an expert in their opposition to Schindler's motion for summary judgment. With respect to the second factor, there is nothing in the record before this Court concerning the importance of the testimony of the precluded witness. The prejudice to Schindler if plaintiffs are permitted to rely on the expert's affidavit in opposition to the pending motion for summary judgment and later, the expert's testimony at a trial would be significant. Schindler had no notice that plaintiffs intended to use an expert witness until its receipt of plaintiffs' opposition to the motion for summary judgment. To allow plaintiffs to proceed with an expert witness at this late date would require substantial additional time for discovery and considerable expense. Finally, with respect to the possibility of a continuance, this Court finds that a continuance is not warranted since discovery closed several months prior to the filing of the instant motion and to allow additional expert discovery would only serve to cause significant delay. Accordingly, for the foregoing reasons, Schindler's request to preclude plaintiffs' expert for plaintiffs' failure to abide by this Court's Case Management Order and request to strike plaintiffs' expert affidavit are granted. For purposes of deciding Schindler's motion for summary judgment, this Court has disregarded the affidavit of C. Stephen Carr and any references thereto.

*Vona*, 2009 WL 2152309, at *8.

Here, Marra's affidavit is dated June 19, 2012. Marra's conclusions and are opinions are based on his review of the video surveillance, photographs, plaintiff's testimony and Mr. Tinnirella's testimony. Moreover, Marra indicates that he visited the Target store and inspected the area in December 2011. Upon review of the procedural history of this case, this Court adopts

the reasoning of the district court in *Vona* and precludes plaintiffs from offering Marra's opinion on the within motion. Plaintiffs have not explained their failure to comply with this Court's prior orders regarding expert disclosure. Magistrate Judge Homer's December 2011 Order specifically directs plaintiffs to provide expert information on or before December 13, 2011. Plaintiffs were aware in December 2011 that any further delay in disclosing expert witnesses would not be tolerated by the Court. The Uniform Pretrial Scheduling Order provides that the failure to comply with deadlines could result in preclusion of testimony. Moreover, the prejudice to defendant cannot be ignored. Defendant had no notice that plaintiffs retained or intended to offer the testimony of an expert witness until receipt of plaintiffs' opposition to the motion for summary judgment. The deadline for the completion of discovery was March 1, 2012. Defendant filed the motion for summary judgment in April 2012. The case is over two years old and thus, any delay or continuance for additional discovery is not warranted or possible. Accordingly, the Court will disregard the affidavit of Michael Marra and will not consider Marra's opinions herein.

### 2.    Qualifications and Reliability

Even if this Court excuses plaintiffs' untimely disclosure, Marra's affidavit is fatally flawed due to its unreliability and plaintiffs' failure to disclose Marra's qualifications. The Federal Rules of Evidence permit opinion testimony by experts when the witness is "qualified as an expert by knowledge, skill, experience, training or education". *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995) (citing Fed. R. Evid. 702). When examining expert testimony, the trial court must also ensure that the testimony "rests on a reliable foundation." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). In this regard, Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court "identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *Amorgianos*, 303 F.3d at 266 (citations and internal quotes omitted). The objective of this "gatekeeping" requirement of *Daubert* and Rule 702 is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The Supreme Court also noted that the *Daubert* factors only apply where it makes sense to do so. *Emig v. Electrolux Home Prod. Inc.*, 2008 WL 4200988, at *7 (S.D.N.Y. 2008) (citing *Kumho*, 526 U.S. at 151-52). Although these factors are properly applied where the opinion in issue is the product of an experiment or analysis, they have little applicability where the opinion is based on professional experience and there really is no methodology or technique supporting it. *Mahoney v. J.J. Weiser and Co., Inc.*, 2007 WL 3143710, at *4 (S.D.N.Y. 2007). In cases involving experience-based opinion, the Court must be satisfied that the opinion is reliable enough to be presented to a jury. *Emig*, 2008 WL 4200988, at *7. A proffered expert who relied

solely on his or her experience in arriving at his or her expert opinion must have based that opinion on sufficient facts or data, and " 'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts,' because 'the trial court's gatekeeping function requires more than simply taking the expert's word for it.' " *Bah v. Nordson Corp.*, 2005 WL 1813023, at *9 (S.D.N.Y. 2005) (quoting Fed. R. Evid. 702 advisory committee's note); *see also Figueroa v. Boston Scientific Corp.*, 254 F.Supp.2d 361, 368 (S.D.N.Y. 2003) (holding that an expert may base his opinion on experience alone and even assuming there was no data to support his opinions or that he neglected to perform tests and measurements, those deficiencies impact the weight of his testimony not the admissibility).

Here, plaintiff has not provided Marra's curriculum vitae and thus, has not established that he possesses a sufficient level of expertise to qualify as an expert in the retail environment. *See Ascher*, 522 F.Supp.2d 452, 459 (E.D.N.Y. 2007). Moreover, Marra's opinions are purely speculative. Marra based his opinion on incorrect factual assumptions that are not in evidence, i.e., plaintiff's testimony regarding a height differential. Marra averred that he "inspected the area in December of 2011". This is nearly 17 months after plaintiff's accident and there is no evidence that the "area" that he inspected included the same rug that allegedly caused the accident. *See Macaluso v. Herman Miller, Inc.*, 2005 WL 563169, at *8 (S.D.N.Y. 2005) (the expert's affidavit was not based upon an inspection of the original chair but an "exemplar" chair and thus, purely speculative). As to the cause of the accident, Marra's affidavit would not have the tendency to make the existence of facts or consequence more probable or less probable than it would be without his opinion. *See Am. Ref-Fuel Co. of Niagara, L.P. v. Gensimore Trucking, Inc.*, 2008 WL 1995120, at *4 (W.D.N.Y. 2008). Marra reviewed the video surveillance and in

his affidavit, he provides conclusory commentary and statements such as: "customers were grabbing shopping carts and the customers were not looking down at their feet, but it appeared to be as if they were looking where they were going next", "[plaintiff] seems to be walking very casually across the floor" and "[i]t looks like plaintiff's left foot got caught upon a trap of sorts". Marra's opinions regarding the actions of other customers, plaintiff's manner of walking and the vague description of a trap are wholly improper and irrelevant. Moreover, Marra's opinions about the adequacy of the carpet repair are based upon the condition of the tape on the carpet as he viewed the video. Again, these statements are irrelevant and unreliable. Marra states that he "measured the variance that being the 'guide' or what appears to be an attempt at a 'guide'" and opines that "the variance of height between the floor and the 'guides' for the shopping carts and the lack of consistently textured walking area constituted a dangerous condition to pedestrians". Marra does not explain what is meant by "guides" nor did he define or specify the variance in any measurable form. Marra does not detail how he measured the variance or if any tests were performed. As to the texture of the walking area, that is a new cause or theory of the accident. Nowhere in her deposition testimony did plaintiff mention the texture of the carpet as a cause of her accident. Upon review of the record, the Court finds Marra's testimony speculative, conclusory, unreliable and irrelevant.

Taken as a whole, the untimely and improper disclosure, failure to properly qualify Marra as expert and the substantive deficiencies in Marra's report warrants exclusion. Thus, the Court will not be considered Marra's affidavit or his opinions within the context of the summary judgment motion.

**III.     Negligence**

Where jurisdiction is based upon diversity, the court must apply the substantive law of the forum state. *Travelers Ins. Co. v. 633 Third Assocs*., 14 F.3d 114, 119 (2d Cir. 1994); *see also Ascher*, 522 F.Supp.at 452 (E.D.N.Y. 2007) (citations omitted). To establish a *prima facie* case of negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). Plaintiff must establish that the defendant created the condition which caused the accident or that the defendant had actual or constructive notice of the condition which caused the fall. *Casiano v. Target Stores*, 2009 WL 3246836, at *3 (E.D.N.Y. 2009) (citation omitted). For constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 837-38 (1986). The failure to establish the cause of an injury is fatal to the claim of negligence. *Ascher*, 522 F.Supp.2d at 457 (citing *Duncan v. Totes*, 21 A.D.3d 984 (2d Dep't 2005) (summary judgment granted when deposition testimony of the plaintiff established that she did not know what caused her fall)). New York law requires that a floor surface present a specific hazard or dangerous condition to support a claim of negligence. *Byrne v. Madison Square Garden Corp*., 189 F.3d 460 (2d Cir. 1999). "Where the evidence establishes a lack of any defect in carpeting, 'conclusory allegations of negligence' are insufficient to withstand summary judgment". *Id*. (citation omitted).

In this action, defendant argues that plaintiffs cannot identify the cause of Sherice Smith's accident and further, plaintiffs cannot establish notice of any defect because there is no evidence of any prior accidents or complaints. Plaintiffs contend that defendants fail to make a prima facie showing of entitlement to judgment as a matter of law because there is an issue of fact as to the

precise location of plaintiffs' fall. Moreover, plaintiffs claim that the there is an issue of fact as to whether the dangerous condition constituted a trap, snare or nuisance.

Plaintiffs opposition to the motion is largely based upon the erroneous assumption that New York procedural law and standards for summary judgment apply herein. Under New York law, a defendant who moves for summary judgment in a slip-and-fall case "has the initial burden of demonstrating, *prima facie*, that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it." *Totten v. Cumberland Farms, Inc.*, 57 A.D.3d 653, 654, 871 N.Y.S.2d 179 (2d Dep't 2008). Relying upon this standard, plaintiffs assert that summary judgment must be denied because "the defendant's [sic] have failed to establish a *prima facie* showing where exactly the fall occurred and where the carpet was repaired therefore the motion should be denied".

Under the federal standard, "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions". *Painchault v. Target Corp.*, 2011 WL 4344150, at *3 (E.D.N.Y. 2011) (citing *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12–13 (2d Cir. 2008)). Though "New York law applies a different standard for summary judgment in slip-and-fall cases, [t]he federal standard controls here because what burdens each party bears on summary judgment is a procedural rather than substantive matter." *Id.* (since the plaintiff would bear the burden at trial of showing that Target had actual or constructive notice of the condition that caused her fall, the Court must grant summary judgment if the record contains no evidence establishing an issue of fact with respect to notice). In federal court, once the movant has shown that no material fact is in dispute, the burden shifts to the non-movant to demonstrate otherwise through specific factual assertions. *See* Fed. R. Civ. Pro. 56(e)(2). "This distinction between the two standards is important in a case like

the instant matter, which relies to a large extent on speculation and inference from a slim set of baseline facts." *Doona v. OneSource Holdings, Inc.* 680 F.Supp.2d 394, 400 -401 (E.D.N.Y. 2010).

Substantively, the video surveillance and photographs presented and marked by witnesses during depositions clearly depict the area where plaintiff fell. As to whether there was any defect in that area, plaintiff testified that she did not observe any defect in the carpet before she fell:

> Q.    Did you notice that your feet hit anything on the floor?
> A.    No, I can't remember. I don't recall.
> Q.    Were you looking down at your feet at the time?
> A.    When I fell?
> Q.    Yes.
> A.    No.
> Q.    Were you looking straight ahead?
> A.    Yep.

Plaintiff testified that she later "observed what caused her to fall" and stated that the rug was "worn" and the "part that was supposed to secure the rug" was "deteriorated". Plaintiff also testified that the accident report, which was prepared by a Target employee, accurately described the accident. The report indicates that the "carpet seam" caused the accident. Thus, the issue before this Court is whether the condition of the carpet constituted a defect and whether defendant had notice of said defect.

Stacie Young was deposed and presented testimony on behalf of defendant. Ms. Young testified that she attended to plaintiff after the fall. Plaintiff told Ms. Young that she tripped over the carpet but did not "specify" how she fell. Ms. Young inspected the carpet area after plaintiff fell. Ms. Young observed a quarter of an inch (1/4) "ripple" in the carpet but admitted that she did not measure or take photographs of the "ripple". During her deposition, Ms. Young was shown photographs of the carpet and she identified tape on the carpet that she stated was present on the rug before plaintiff's fall. However, Ms. Young did not know how long the tape was there.

Frank Tinnirella was also deposed and testified that for the five months prior to the accident, his daily inspections revealed no issues with respect to the subject carpet. At "some time prior to plaintiff's accident", Mr. Tinnirella noticed a separation of the transition strip that borders the carpet. He repaired it with epoxy cement and put a black vulcanized sealing strip over the top. Mr. Tinnirella could not recall specifically when and testified that he made no record of the repair. Mr. Tinnirella testified that after he repaired the carpet, there was under an eighth of an inch (1/8) transition between the strip and carpet.

Based upon the record, even viewing the facts in a light most favorable to plaintiffs, the Court finds that defendant is entitled summary judgment. Plaintiff has failed to raise a triable issue of fact demonstrating that a dangerous condition existed and further, that defendant had notice of the allegedly dangerous condition. There is no evidence or testimony that the carpet was worn or deteriorated at the time of the accident. Plaintiffs only "evidence" is Sherice Smith's self-serving, conclusory testimony that the carpet was "worn". This is insufficient to raise an issue of fact requiring a trial of this action. *See Varrone v. Dinaro,* 209 A.D.2d 508, 509 (2d Dep't 1994) (the deposition testimony that carpet treads were "worn", and that the varnish underneath these treads had "worn off", was insufficient, standing alone, to create an issue of fact as to the existence of a dangerous or defective condition). Plaintiffs mistakenly rely upon the maintenance logs as evidence that the carpet was defective. Plaintiffs assert that according to the maintenance logs, the front end carpet needed extraction on March 10, March 16, March 22 and May 11, 2010. Thus, plaintiffs allege that this establishes "clear, actual notice of a dangerous condition". The logs, which were annexed to Mr. Tinnirella's affidavit as Exhibit 1, indicate, "front mats need extraction" and "front mats need ext.", "carpets need extracting", and "carpets in store need extract". This evidence does not raise a triable issue of fact demonstrating that

defendant was aware of a dangerous condition. Plaintiff has failed to establish that the log entries refer to the same area where her accident occurred or the same carpet that allegedly caused her accident. Moreover, there is no evidence describing the term "extraction" or what was done to the rugs at that time. Evidence of some past repair work in the vicinity of plaintiff's accident is not proof of negligence as plaintiffs have failed to establish any connection between the log entries and the alleged defect that caused her accident. *See Witte v. Inc. Vill. of Port Washington N.*, 114 A.D.2d 359 (2d Dep't 1985). Plaintiff's conclusory assertions that these log entries establish actual notice of a dangerous condition is devoid of any evidentiary support.

Even assuming that the evidence demonstrates that the carpet was "worn", plaintiff has failed to prove that the defect was visible and apparent for a sufficient period of time to allow defendant to repair the condition. *See Engler v. Kalmanowitz,* 60 A.D.3d 540 (1st Dep't 2009) (the plaintiff's assertion that the carpet adhesive lost its strength was insufficient to establish notice); *see also Mirnelli v. Regal Cinemas*, 40 A.D.3d 1052 (2d Dep't 2007) (the plaintiff failed to establish how long the alleged hazard, i.e., a piece of carpet raised two to four inches off the floor, existed prior to the accident); *see also Mazerbo v. Murphy*, 52 A.D.3d 1064, 1065-66 (3d Dep't 2008) (the testimony of the plaintiff's co-worker that she tripped over the same protrusion in the carpet a "day or so" prior to the plaintiff's accident was insufficient to create notice because the co-worker did not inform the defendant of the bump). Here, plaintiff admitted that she was not aware of any prior accidents involving the carpet or any prior complaints regarding the condition of the carpet. The defense witnesses also stated that they were unaware of any prior accidents or complaints. The fact that Mr. Tinnirella repaired the carpet "at some time" prior to the accident is insufficient to establish notice of the defect that allegedly caused this accident. *See*

*Spanos v. Town of Clarkstown*, 81 A.D.3d 711, 713 (2d Dep't 2011) (the fact that the defendant repaired the road two months before the accident was insufficient to establish notice).

Even if the Court considers plaintiff's entire affidavit and her claim that a height differential caused her to trip and fall, the factual dispute as to the exact height is immaterial and does not affect the outcome of the case. The record clearly establishes that the defect was too trivial to be actionable. A property owner may not be held liable for damages for "trivial defects on a walkway, not constituting a trap or nuisance, as a consequence of which a pedestrian might merely stumble, stub his toes or trip over a raised projection". *D'Nelson v. Costco Wholesale Corp.*, 2006 WL 767866, at *4 (E.D.N.Y. 2006) (citations omitted). Generally, when the height differential is approximately one inch (1"), New York courts and courts applying New York law award summary judgment to the defendant. *Natijehbashem v. U.S.*, 828 F.Supp.2d 499, 507 (E.D.N.Y. 2011) (collecting cases). However, there is no "minimal dimension test" or "*per se* rule" regarding the minimum height or depth of a defect. *Id.* (citing *Trincere v. County of Suffolk*, 90 N.Y.2d 976, 977 (1997)). "The Court must examine the width, depth, elevation, irregularity, and appearance of the defect as well as the time, place and circumstances." *Trincere*, 90 N.Y.2d at 977; *see also Faddoul v. Norton Co.*, 1998 WL 404543 (W.D.N.Y. 1998) (the plaintiff fell on a "trivial defect"; a strip protruding one inch from underneath a rubber mat). "[T]he trivial nature of the defect may loom larger than another element and therefore, not every injury allegedly caused by an elevated brick or slab need be submitted to a jury". *Czochanski v. Tishman Speyer Prop., Ltd.*, 45 F. App'x 45, 47 (2d Cir. 2002) (the Court must consider not only the defect's dimensions but also the circumstances surrounding the accident).

In her affidavit, plaintiff stated that the total difference was "one inch". *See Natijehbasehm*, 828 F.Supp.2d at 507 (the plaintiff claimed that the height differential between a

26

concrete surface and asphalt surface was one inch and given the time, place and circumstances of the accident, the defect was too trivial to be actionable). This falls within the range of height differentials found to be trivial. Moreover, plaintiff testified that the lighting was normal, there is no evidence of inclement weather and there were no prior complaints regarding the area where plaintiff fell. *Hardsog v. Price Chopper Operating Co., Inc.*, 2012 WL 5258489, at *1 (3d Dep't 2012). Plaintiffs offer no other details regarding the elevation other than the one-inch differential. *Spiegel v. Vanguard Const. and Dev. Co.,* 50 A.D.3d 387 (1st Dep't 2008) (the photographs did not evidence a trap or a situation where a defect might have been masked from view). Based upon the photographs, testimony and plaintiff's description of the accident, there is no evidence that the alleged defect creased a trap or a nuisance and is too trivial to be considered negligent.

For these reasons, the Court finds that defendant is entitled to judgment as a matter of law and dismisses plaintiffs' complaint in its entirety. Plaintiffs' "evidence" is mere conjecture and speculation and insufficient to establish a viable cause of action for negligence to survive a motion for summary judgment.

## IV. Additional Requests for Relief

In the alternative, defendant seeks an Order dismissing plaintiffs' second cause of action and precluding plaintiff from introducing expert testimony at trial. Based upon this Court's ruling above, defendant's additional requests for relief denied as moot.

## CONCLUSION

It is hereby

**ORDERED**, that defendant's motion for summary judgment and dismissal of plaintiffs' complaint in its entirety (Dkt. No. 15) is **GRANTED**.

The Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated:  November 20, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge